STATE OF MAINE  
Washington, ss

SUPERIOR COURT  
Location: Machias  
Docket No.: CV-17-_13_

Joshua Smith and Monica Polches )
)
v. )
)
Town of Machias, the Machias Police ) COMPLAINT
Department, Chief Grady Dwelley, )
Sergeant Wade Walker and Officer )
William Scull in his official and individual )
capacity )

NOW COMES the Plaintiffs Joshua Smith and Monica Polches who hereby complain against the Defendants as follows:

**PARTIES AND VENUE**

1. The Plaintiff Joshua Smith is an adult Maine resident residing in Princeton, Washington County, Maine, who is married to Monica Polches.

2. The Plaintiff Monica Polches is an adult Maine resident residing in Princeton, Washington County, Maine, who is married to Joshua Smith.

3. The Defendant Town of Machias is a fully incorporated Town in the County of Washington, State of Maine.

4. The Defendant Machias Police Department is a political subdivision of the Town of Machias located in the Town of Machias, County of Washington, State of Maine.

5. The Defendant Chief Grady Dwelley is a full time police officer employed by the Machias Police Department through the Town of Machias in County of Washington, State of Maine.

6. The Defendant Sergeant Wade Walker is a full time police officer employed by the Machias Police Department through the Town of Machias in County of Washington, State of Maine.

7. The Defendant Officer William Scull is a full time police officer employed by the Machias

    Police Department through the Town of Machias in County of Washington, State of Maine.

8. Unless otherwise specifically stated herein, any and all facts alleged in this Complaint occurred in the Town of Machias, County of Washington, State of Maine.

## FACTS

9. On August 6, 2015, Joshua Smith, Sr. went to Skywalker's Bar and Grille in Machias, Maine for dinner and socialization. At approximately 10:44 p.m., Mr. Smith left Skywalker's Bar and Grille and walked across the street to the Irving Gas Station. He could not find what he was looking for and he exited the store at 10:47 p.m. At 10:56 p.m. he was outside of the gas station trying to find someone to give him a ride home when an employee of the Irving Gas Station called the police to ask that Mr. Smith be removed from the property. At 10:59 Mr. Smith re-entered the gas station and spoke to the employee who was working. He was asked to leave and he complied with that request.

10. On August 6, 2015, Officer William Scull was working and was employed by the Machias Police Department through the Town of Machias. His supervisors were Sergeant Wade Walker and Chief of Police Grady Dwelley.

11. At 11:03 p.m. Officer William Scull of the Machias Police Department entered the Irving parking lot, parked his car and entered the store. He spoke to an employee of the Irving Gas Station and then left the store with that employee to seek Mr. Smith. He located Mr. Smith off the property of Irving Gas Station and ordered him to return with him to his police car which was located in the Irving parking lot. Mr. Smith asked if he was under arrest and Officer Scull informed him that he was not, but that he would be given a trespass warning.

12. Officer William Scull wrote in his police report for this incident that he "asked him to follow me to my vehicle. As we went towards it, he kept bumping into me and trying to stay very

close. I asked him repeatedly to move away from me." These written statements are in fact false. Joshua Smith did not make contact with Officer William Scull at any point as they walked towards the police car with the exception of when Officer William Scull bumped into Joshua Smith when Officer William Scull walked around a vehicle. Officer William Scull did not repeatedly ask Mr. Smith to move away from him. Officer William Scull intentionally falsified his police report in order to cover up his later actions and attempted to place blame on Mr. Smith for his own unlawful behavior.

13. Officer William Scull's written report next claims that when he and Joshua Smith arrived at his police car Joshua Smith "moved around the vehicle towards him." Officer William Scull then writes that Joshua Smith "again moved towards me" and he decided to place Mr. Smith in handcuffs "and detain him for his safety and mine" because Joshua Smith "repeatedly attempted to move into me and his behavior was becoming more and more irrational." These statement are all false, as a video recording made by the Irving Gas Station demonstrate. Officer William Scull intentionally falsified his police report in order to cover up his later actions and attempted to place blame on Mr. Smith for his own unlawful behavior.

14. Joshua Smith asked Officer William if he was under arrest since his hands were then cuffed behind his back. Officer William Scull responded by telling him that he was not under arrest, but was "being detained" and that he could not leave until Officer William Scull was done with his paperwork. Officer William Scull conducted an unlawful search of Joshua Smith. Joshua Smith informed Officer William Scull that he had no right to place him in handcuffs, to search him without consent and not allow him to leave if he had not committed any crime.

15. Joshua Smith then began walking away from Officer William Scull while still in handcuffs. Officer William Scull then dropped his phone on the ground and grabbed Joshua Smith around the neck and left arm from behind him. He placed one led in front of Joshua Smith and hip-tossed Joshua Smith over his right hip, propelling him face first into the parking lot pavement while Joshua Smith still had his hands cuffed behind his back. Joshua Smith lost consciousness from the impact of his head with the ground. This event was captured on the Irving Gas Station video recording, which depicts all events as alleged in this Complaint.

16. Joshua Smith sustained severe injuries to his face and shoulder, including a broken orbital socket and damage to his should which required surgery to repair. Joshua Smith also sustained permanent partial vision loss from the injuries sustained by Officer William Scull's actions.

17. Officer William Scull describes his actions in his police report by stating that he "quickly moved to Smith and attempted to stop him. Smith had already demonstrated uncooperative behavior by refusing to follow instructions and repeatedly moving into me. Smith is also much larger than me. I grabbed him by the arms and attempted to use his momentum and body weight to turn and stop him. Smith was already off balance when I grabbed him due to his intoxicated state. I was not anticipating how fast he would fall. I turned Smith towards me, he fell over my leg and to the ground. Smith's face struck the ground, causing a cut/scrape over his right eye. I told him to stay where he was and he was still not free to go." This entire narrative in his police report is intentionally false and was written by Officer William Scull to attempt to cover up his own illegal and excessive actions.

18. Joshua Smith did regain consciousness after being shaken and was lifted to his feet by Officer William Scull and placed in the patrol car. Officer William Scull then placed a cell phone call and conversed for several minutes. Upon information and belief, this phone call was made to either Sergeant Wade Walker (his immediate supervisor) or Chief Grady Dwelley (the Chief of the Machias Police Department.). Joshua Smith asserts that there was a discussion with one of Officer William Scull's supervisors about how to falsify the police report to cover up the assault that Officer William Scull had just committed on Mr. Smith

19. Officer William Scull then removed Joshua Smith from his patrol car and completed the trespass warning. Joshua Smith showed the officer his bloody, damaged face several times. Officer William Scull then removed the handcuffs from Joshua Smith and told him he was free to go.

20. Officer William Scull refused to get medical assistance for Joshua Smith, who was clearly in need of medical assistance. Joshua Smith asserts that he was released so that Officer William Scull would not have to file a report on this matter. Joshua Smith left the parking lot as ordered by Officer William Scull.

21. Joshua Smith returned to the parking lot moments later demanding that he receive medical attention for his injuries. He refused to leave until medical attention was given to him. At this point, Officer William Scull arrested him for demanding medical treatment and placed him back in handcuffs. Officer Smith later brought Joshua Smith to Washington County Jail, summons him for Disorderly Conduct and filed his police report which contained numerous false statements with the Washington County District Attorney's Office, resulting in Joshua Smith being falsely charged with the crime of

disorderly conduct on August 10, 2015.

22. When the ambulance arrived, Officer Scull intentionally misled the EMT worker by telling her that Joshua Smith had tripped over his leg. Officer William Scull demonstrated to the EMT a simulation of a person falling sideways over his own leg. This false statement and demonstration was intended by Officer William Scull to cover up the fact that the injuries occurred from Officer William Sculls intentional assault. These false statements caused the EMT and emergency professional to underestimate the amount of force which had been used on Joshua Smith and resulted in him not receiving the medical care which was necessary.

23. The result of the assault by Officer William Scull was that Joshua Smith suffered comminuted, displaced fractures transversing the right frontal sinus and right orbital roof, a displaced right nasal fracture, a closed fracture of the acromial end of the right clavical and an elbow contusion. The swelling in his face and right orbital socket caused temporary blindness and Joshua Smith continues to have impairment of vision in his right eye and to suffer from damage to his brain which has caused depression, anxiety, panic attacks, loss of sleep, paranoia, cognitive difficulties, memory loss and anger in his interpersonal relationships. Joshua Smith's physical and mental injuries are ongoing and he is still receiving treatment.

24. The injuries sustained by Joshua Smith which were caused by Officer William Scull have severely affected his relationship with his wife Monica Polches and their child.

25. Officer William Scull acted with intentional malice when he used an amount of force on Joshua Smith which was grossly excessive, in light of the fact that he could have simply grabbed the handcuffs which were already on Joshua Smith behind his back and raised

them higher forcing Joshua Smith to stop walking.

26. Officer William Scull also maliciously falsified his police report in order to attempt to cover up his assault on Joshua Smith and have him falsely prosecuted. Joshua Smith was initially charged with disorderly conduct Once the District Attorney's Office received a copy of the video recording which demonstrated that Officer William Scull had falsified his police report the Complaint for Disorderly Conduct which they had filed was dismissed.

27. The Town of Machias directly supervises the Machias Police Department and is aware that the Machias Police Department has a history of its officers committing assaults against persons who are either suspected of crimes or in the custody of Machias Police Officers.

28. The Machias Police Department has a history of its officers assaulting suspects who are in their custody. Upon information and belief the Town of Machias and the Machias Police Department have had numerous legal claims filed against the Department within the past 10 years which have resulted in non-public settlements. These settlements demonstrate that the Town of Machias and the Machias Police Department had knowledge that their police officer employees needed specific training in the area of the proper use of force and the level of force which would be considered excessive.

29. The Machias Police Department has made no effort to properly train or supervise new police officers in connection with an appropriate amount of force to use against a person. In this instance Sergeant Wade Walker and Chief Grady Dwelley did not properly supervise or train Officer William Scull prior to allowing him to act on his own as a police officer for the Town of Machias and they were both aware that he was still on the

probationary status because he had not completed his police officer training.

30. The Town of Machias was aware that Officer William Scull had not completed all of his training to be a full time officer at the time that he was hired and shortly after this incident they terminated his employment on the basis of his lack of completion of training and his probationary status.

## COUNT I - MAINE CIVIL RIGHTS ACT - 5 M.R.S.A. 4682, et seq

31. Plaintiffs repeats and re-alleges paragraphs 1-30 above as if set forth herein.

32. Plaintiffs assert that a written Notice of Claim was served on each of the individual Defendants in this matter with 180 days of the date of injury as required by law.

33. Plaintiffs assert that Officer William Scull, while acting under color of law, intentionally interfered by physical force and violence and unlawful search and seizure against Joshua Smith with rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the State of Maine.

## COUNT II - ASSAULT AND BATTERY

34. Plaintiff Joshua Smith repeats and re-alleges paragraphs 1-30 above as if set forth herein.

35. Officer William Scull committed an aggravated assault against Joshua Smith by intentionally, knowingly or recklessly causing bodily injury to him that created a substantial risk of death or extended convalescence necessary to recover of physical health.

36. Officer William Scull committed an aggravated assault against Joshua Smith by intentionally, knowingly or recklessly causing bodily injury to him that caused serious, permanent loss or substantial impairment of his vision.

37. Officer William Scull committed an aggravated assault against Joshua Smith by

intentionally, knowingly or recklessly causing bodily injury to him under circumstances which manifested extreme indifference of value of human life.

## COUNT III - FALSE ARREST

38. Plaintiff Joshua Smith repeats and re-alleges paragraphs 1-30 above as if set forth herein.

39. Plaintiff Joshua Smith asserts that Officer William Scull intended to arrest and confine him unlawfully when he initially placed Joshua Smith in handcuffs, when he placed Joshua Smith in his patrol car and when he later arrested and placed Joshua Smith in handcuffs before calling an ambulance to assist him.

40. Joshua Smith was conscious of the arrest and confinement on all three occasions.

41. Joshua Smith did not consent to his unlawful arrest and confinement and in fact acted to prevent his arrest and confinement.

42. Officer William Scull had no right or privilege to arrest or confine Joshua Smith on any of the three occasions detailed herein above.

## COUNT IV - FALSE IMPRISONMENT

43. Plaintiff Joshua Smith repeats and re-alleges paragraphs 1-30 above as if set forth herein.

44. Plaintiff Joshua Smith asserts that Officer William Scull intended to confine him unlawfully when he initially placed Joshua Smith in handcuffs and ordered him not to leave the while he wrote a trespass warning.

45. Plaintiff Joshua Smith asserts that Officer William Scull intended to confine him unlawfully when he placed him in the patrol vehicle with handcuffs on after he had assaulted Joshua Smith.

46. Plaintiff Joshua Smith asserts that Officer William Scull intended to confine him unlawfully when he falsely arrested Joshua Smith for disorderly conduct because Joshua

Smith was demanding medical attention.

47. Officer Smith's actions did in fact result in the confinement of Joshua Smith.

48. Joshua Smith asserts that he was conscious of his confinement and that he was harmed by said confinement.

## COUNT V - MALICIOUS PROSECUTION

49. Plaintiff Joshua Smith repeats and re-alleges paragraphs 1-30 above as if set forth herein.

50. Officer William Scull filed a false police report with the Washington County District Attorney's Office in order to initiate and procure a prosecution of Joshua Smith without probable cause and a Complaint alleging Disorderly Conduct was in fact filed against Joshua Smith on August 10, 2015.

51. Officer William Scull acted with malice towards Joshua Smith when he attempted to have him prosecuted for a crime he did not commit in order to attempt to cover up his own criminal behavior in assaulting Joshua Smith.

52. Joshua Smith asserts that the criminal prosecution against him that was caused by Officer William Scull's filing of an intentionally misleading and false police report was dismissed by the District Attorney' Office on August 26, 2015

## COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. Plaintiff Joshua Smith repeats and re-alleges paragraphs 1-30 above as if set forth herein.

54. Officer William Scull intentionally or recklessly inflicted severe emotional distress on Joshua Smith by his conduct in falsely arresting, imprisoning and assaulting Joshua Smith and attempting to have him falsely prosecuted to cover up his actions.

55. The excessive force used in the assault against Joshua Smith, the intentionally false statements in his police report and his attempt to mislead medical professionals and the

      District Attorney's Office to cover up his actions is outrageous and exceeds all bounds of decency and must not be condoned or tolerated in the Machias, Washington County Maine community.

56. Officer William Scull's actions directly caused emotional distress to Joshua Smith for which he continues to be treated medically by doctor and Acadia Hospital.

57. The emotional stress caused to Joshua Smith by Officer William Scull has been extreme, has lasted for years and has resulted in him not being able to function normally in society or with his own family, such that no reasonable person could be expected to endure it.

## COUNT VII - VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983: EXCESSIVE FORCE

58. Plaintiff Joshua Smith repeats and re-alleges paragraphs 1-30 above as if set forth herein.

59. Joshua Smith asserts that Officer William Scull used force on him when he grabbed him from behind by the neck and arm and intentionally hip-tossed Joshua Smith face first into the Irving Gas Station parking lot pavement.

60. Joshua Smith asserts that the force used was unreasonable in light of the fact that he was already hand-cuffed behind his back, he was walking away from Officer William Scull with his back turned to Officer William Scull offering him no threat or harm at all. Considering that Officer William Scull could have simply grabbed the handcuffs and raised his arms to stop Joshua Smith the use of such tremendous force was unreasonable.

61. Officer William Scull knew at the time he used force of Joshua Smith that hip-tossing an individual face first into the ground while his hands were cuffed behind his back present a serious risk of harm to Joshua Smith, but he intentionally and recklessly disregarded the risk of harm to Joshua Smith.

62. Officer William Smith's excessive use of force resulting in Joshua Smith sustaining harm as demonstrated by the injuries of a comminuted, displaced fractures transversing the right frontal sinus and right orbital roof, a displaced right nasal fracture, a closed fracture of the acromial end of the right clavical and an elbow contusion, the swelling in his face and right orbital socket which caused temporary blindness and continues to cause impairment of vision in the right eye and emotional injuries which has caused depression, anxiety, panic attacks, loss of sleep, paranoia, cognitive difficulties, memory loss and anger in his interpersonal relationships.

63. Officer William Smith's use of excessive force against Joshua Smith was in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT VIII - VIOLATION OF CIVIL RIGHTS UNDER 42 USC 1983: FAILURE TO PROPERLY SUPERVISE AND/OR TRAIN

64. Plaintiff Joshua Smith repeats and re-alleges paragraphs 1-30 above as if set forth herein.

65. Joshua Smith asserts that the Town of Machias and the Machias Police Department have received numerous complaints from individuals pertaining to the use of excessive force employed by the police officers of the Machias Police Department.

66. Joshua Smith asserts that the Selectmen of the Town of Machias and Chief Grady Dwelley have knowledge of these complaints and have participated in numerous negotiated monetary settlements which were not made public within the past 10 years. As such these persons responsible for setting policies on training and supervising police officers employed by the Town of Machias through the Machias Police Department had knowledge of the practice of the use of excessive force yet they did nothing to end the practice.

67. Joshua Smith asserts that the Town of Machias through the Machias Police Department and its supervisors Chief Grady Dwelley and Sergeant Wade Walker employed a policy of hiring police officer with inadequate training and placing them on probationary periods to allow them to complete adequate training at a later date. During this probationary period officers are required to be supervised by Chief Grady Dwelley and Sergeant Wade Walker, but they are often allowed to patrol on their own without adequate training or supervision.

68. Joshua Smith asserts that Officer William Scull is one of the officers who was allowed to patrol unsupervised without completing the training necessary to understand the limits of the use of force in his employment. In this case, Officer William Scull was dismissed from the Machias Police Department shortly after this incident because of his failure to complete his required training and these facts were known to the Town of Machias through the Machias Police Department and its supervisors Chief Grady Dwelley and Sergeant Wade Walker at the time of the incident described herein above.

69. The policies of the Town of Machias through the Machias Police Department in reference to training and supervision of its police officers are so inadequate, and the needs of proper training and supervision so obvious that it is clear that the policy makers are deliberately indifferent to the need to protect the constitutional rights of individuals from its police officer employees who do not have training or supervision that is adequate to the tremendous responsibility and power that the job gives to its employees.

### COUNT IX - LOSS OF CONSORTIUM UNDER 14 M.R.S.A. 302

70. Plaintiff Monica Polches repeats and re-alleges paragraphs 1-30 above as if set forth herein.

71. Plaintiff Monica Polches asserts that the physical and mental injuries inflicted by Officer William Scull on her husband Joshua Smith caused harm to her relationship with him. She asserts that she was harmed by the loss of comfort, society and companionship with her husband due to the actions of Officer William Scull.

72. Plaintiff Monica Polches asserts that she is due monetary damages to compensate her for the loss of consortium with her husband Joshua Smith.

## COUNT X - DAMAGES

73. Plaintiffs Joshua Smith and Monica Polches repeats and re-alleges paragraphs 1-30 above as if set forth herein.

74. Plaintiffs Joshua Smith and Monica Polches assert that damages in this matter include but are not limited to physical pain and suffering, including permanent partial vision loss, emotional distress, past and future lost wages, past and future medical bills, loss of consortium, punitive damages and attorney's fees.

75. Plaintiffs Joshua Smith and Monica Polches assert that the actions of the Defendants were intentional, and constituted gross misconduct and that they should be awarded compensatory and punitive damages, along with legal fees and costs in an amount which exceeds two million dollars.

WHEREFORE, Plaintiffs pray for Judgment against Defendants, plus interests, costs and other such relief as the Honorable Court may deem just and proper.

Dated this 4th day of August, 2017.          Attorney for Joshua Smith and Monica Polches

_____
Jeffrey W. Davidson, Bar No. 9579

Davidson Law Office, L.L.C.
86 Court Street
Machias, Maine 04654
(207) 259-3411