UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSHUA SMITH and <br> MONICA POLCHES, <br><br> Plaintiff <br><br> v. <br><br> TOWN OF MACHIAS, <br> MACHIAS POLICE DEPARTMENT <br> CHIEF GRADY DWELLEY, <br> SERGEANT WADE WALKER and <br> OFFICER WILLIAM SCULL <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No: 1:17-cv-00320-GZS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS TOWN OF MACHIAS, MACHIAS POLICE DEPARTMENT, CHIEF GRADY DWELLEY, AND SGT. WADE WALKER'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

**MOTION**

Pursuant to Fed. R. Civ. P. 56 and the Court's Order in Lieu of Pre-Filing Conference dated April 30, 2018 (Doc. No. 22), Defendants Town of Machias, Machias Police Department, Chief Grady Dwelley, and Sgt. Wade Walker (hereinafter, collectively, the "Machias Defendants") hereby move for summary judgment as to all of Plaintiff's claims. As set forth below and in the accompanying Machias Defendants' Statement of Material Facts Not in Dispute ("SMF"), the Machias Defendants contend that there are no genuine issues of material fact precluding this Court entering summary judgment in their favor.

**MEMORANDUM OF LAW**

**BACKGROUND**

This case arises out of the arrest of Plaintiff Joshua Smith at a gas station in Machias on the night of August 6 and into the early hours of August 7, 2015 by Defendant William Scull and

Defendant Scull's use of force to effect the arrest. At the time of Plaintiff's arrest, Defendant Scull was a police officer with the Machias Police Department. Plaintiff alleges, *inter alia*, that Defendant Scull used excessive force against him. Chief of Police Grady Dwelley and Sgt. Wade Walker were not present at any point during the interaction between Plaintiff Smith and Defendant Scull on August 6/7, 2015. The interaction between Plaintiff and Defendant Scull was largely captured by the body camera worn by Scull and surveillance cameras outside the gas station where the arrest took place.

Upon review of the videos of the incident, Chief Dwelley placed Defendant Scull on administrative leave and asked Sgt. Walker to conduct an internal investigation. Contrary to Plaintiffs' bald accusations in the Complaint, Complaint (Doc. No. 3-2) ¶ 18, Defendants Dwelley and Walker never directed Defendant Scull to falsify his police report. SMF ¶ 16, 20. Nor did they speak with Defendant Scull at any point during Defendant Scull's interaction with Plaintiff Smith. Before Sgt. Walker's investigation was completed, the Town decided to turn over responsibility for the investigation to the Maine State Police. While the MSP investigation was still ongoing Defendant Scull was terminated by the Town. At the time, Defendant Scull was still a probationary employee whose employment could be terminated without cause.

Joshua Smith and his wife, Monica Polches, subsequently brought this civil rights action against Defendants. Plaintiffs' ten-count Complaint alleges violations of Smith's federal and state constitutional rights, as well as various state law tort claims. Plaintiff Polches also alleges a loss of consortium claim (Count IX) against Defendant Scull. The only claims directed at the Machias Defendants are Count VIII for a violation of civil rights under 42 U.S.C. § 1983 based on a failure to properly supervise and/or train and Count X for "Damages." Complaint ¶¶ 64-69, 73-75.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fabiano v. Hopkins*, 352 F.3d 447, 452 (1st Cir. 2003). *See* Fed. R. Civ. P. 56(c). A fact is "material" if it "has the potential to change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters of Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (parallel quotation omitted). An issue is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id*. (parallel quotation omitted).

The facts are viewed in the light most favorable to the nonmoving party and the court draws all reasonable inferences in favor of the nonmoving party. *Fed. Ins. Co. v. Commerce, Inc. Co.*, 597 F.3d 68, 70 (1st Cir. 2010). However, "[o]nce the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Napier v. Town of Windham*, 187 F.3d 177, 182 (1st Cir. 1999). The nonmoving party must present "competent evidence and specific facts to stave off summary judgment." *Tropigas*, 637 F.3d at 56 (internal citations omitted). The nonmoving party's "obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001).

**ARGUMENT**

**I.     THE MACHIAS POLICE DEPARTMENT IS NOT A PROPER DEFENDANT**

As a threshold matter, Plaintiffs have improperly named the Machias Police Department as a defendant. The Machias Police Department is not a separate political entity that has the

capacity to sue and be sued. *See, e.g., Norton v. City of South Portland*, 831 F Supp. 2d 340, 360 n.14 (Me. 2011) (construing claims against the police department as claims against the city, which the plaintiff named as a proper defendant); *Estate of Hampton v. Androscoggin Cnty.*, 245 F. Supp. 2d 150, 158 n.17 (D. Me. 2003) ("Defendants correctly observe that there effectively is only one municipal defendant, the County, of which the Department is a subdivision."). The Town of Machias is the only proper defendant for purposes of the municipal liability claim in Count VIII. *See Cronin v. Town of Amesbury*, 895 F. Supp. 375, 383 (D. Mass. 1995), *aff'd*, 81 F.3d 257 (1st Cir.1996) (entities such as a police department lack legal identity apart from a town and therefore are not properly named as defendants in section 1983 suit). Any allegations against the Machias Police Department should be, and are, for purposes of this Motion, construed as claims against the Town. *See, e.g. Johnson v. City of Biddeford*, No. 2:17-CV-00264-JDL, 2018 WL 1173428, at *1 (D. Me. Mar. 6, 2018).

## II. SUMMARY JUDGMENT IN FAVOR OF THE MACHIAS DEFENDANTS IS APPROPRIATE BECAUSE THERE IS NO UNDERLYING CONSTITUTIONAL VIOLATION

The absence of an underlying constitutional deprivation precludes recovery on Plaintiffs' supervisory and municipal liability claims against the Machias Defendants. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 – 82 (1st Cir. 1994). Therefore, the Town of Machias cannot be liable under 42 U.S.C. § 1983 absent an underlying violation by Defendant Scull. *See Norton*, 831 F. Supp. 2d at 366 ("[I]n the absence of finding that the officers involved violated [plaintiff's] constitutional rights, there can be no municipal liability."). In the event the constitutional claims against Defendant Scull are dismissed, the Court must grant summary judgment in favor of the Machias Defendants as to those same claims.

### III.   THERE IS NO BASIS FOR DIRECT LIABILITY AGAINST CHIEF DWELLEY AND SGT. WALKER

Plaintiffs' Complaint does not allege, and there is nothing in the record to suggest, that Defendants Dwelley and Walker were direct participants in the events of August 6/7, 2015 that gave rise to this action. The undisputed record establishes that neither defendant was present at any point during Defendant Scull's interaction with, and subsequent arrest of, Plaintiff Smith. SMF ¶¶ 9-10. It is also undisputed that Chief Dwelley and Sgt. Walker were not present for, and did not participate in, the use of force by Officer Scull. *Id.* Furthermore, although Plaintiff claims that Defendant Scull spoke with Chief Dwelley or Sgt. Walker by telephone during the incident, Complaint ¶ 18, this assertion is unfounded and not supported by any competent, admissible record evidence. SMF ¶ 13. The only admissible evidence demonstrates that neither Chief Dwelley nor Sgt. Walker spoke with Defendant Scull at any point during his interaction with Plaintiff Smith on August 6/7, 2015. SMF ¶¶ 11-12. "Absent evidence of participation, concerted action, or at least culpable knowledge, one officer cannot be held jointly liable under section 1983 for another officer's" alleged unconstitutional conduct. *See Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006). Here, there is no evidence that would support a finding of participation, concerted action, or culpable knowledge on the part of Chief Dwelley or Sgt. Walker.

There are circumstances in which a police officer may be held liable for the failure to prevent an alleged constitutional violation by another officer, even if he or she does not personally participate. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.1990). However, by not specifically alleging it in the Complaint, Plaintiffs have waived any claims based on this so-called "bystander liability." *See, e.g. Calvi*, 470 F.3d at 430 & n.3. In any event, Plaintiffs cannot make out the elements of a bystander claim against Chief Dwelley or Sgt. Walker as a matter of law, as such a claim requires that they were present at the scene of a

constitutional violation by another officer and failed to intervene to stop it, though having a reasonable opportunity to do so. *See Gaudreault*, 923 F.2d at 207, n.3.

The only claims asserted against Chief Dwelley and Sgt. Walker are based on their positions and actions as supervisors in the Machias Police Department. Therefore, the claims against Defendants Dwelley and Walker necessarily require that Plaintiffs introduce record evidence that satisfies the supervisory/municipal liability standard of deliberate indifference. *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014) ("§ 1983 liability cannot rest solely on a defendant's position of authority."); *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 192 (1st Cir. 1998) ("Supervisory liability under § 1983 'cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions'") (internal citation omitted). It is undisputed that the two supervisors played no direct role in the events of August 6/7, 2015. Accordingly, any direct claims against Defendants Dwelley and Walker based on their own acts or omissions must fail as a matter of law.

### IV. PLAINTIFFS CANNOT MEET THE STANDARD FOR SUPERVISORY/MUNICIPAL LIABILITY

Even assuming, *arguendo*, that there was a dispute of fact as to whether there was an underlying constitutional violation, Plaintiff cannot meet the standard for municipal liability as a matter of law. Plaintiffs allege that Chief Grady Dwelley and Sgt. Walker share liability with Defendant Scull based on a failure to train and supervise and the existence of a municipal policy, custom, or practice that produced the alleged constitutional violations. A supervisor can be legally responsible for constitutional violations committed by a subordinate officer if the supervisor's own action or inaction can be affirmatively linked to the subordinate's conduct through admissible record evidence proving deliberate indifference on the supervisor's part. *See Estate of Bennett v. Wainwright*, 548 F.3d 155, 176-77 (1st Cir. 2008). Plaintiffs' supervisory

and municipal liability claims based on a failure to supervise, train and an unconstitutional policy or custom cannot survive summary judgment.

### A. There is No Evidence of Supervisory Conduct that Amounts to Deliberate Indifference.

A supervisor can be liable if "the supervisor's action or inaction was affirmatively linked to [the subordinate's unconstitutional] behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Id.* In order to meet the deliberate indifference standard, First Circuit precedent requires "a strong causal connection between the supervisor's conduct and the constitutional violation." *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014). In addition, the supervisor must have "actual or constructive knowledge" of a "grave risk of harm" posed by the subordinate and fail to take "easily available measures to address the risk." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016).

Here, there is no evidence in the record to create a dispute of fact regarding deliberate indifference on the part of the Machias Defendants. There is nothing in the record to suggest that Defendants Dwelley, Walker or the Town had any actual or constructive knowledge of a grave risk of harm posed by Defendant Scull. To the contrary, the only record evidence demonstrates that at the time of Smith's arrest, Defendant Scull was a graduate of the Maine Criminal Justice Academy and certified by the State of Maine to work as a full time law enforcement officer. SMF ¶ 3, 8. Moreover, at the time of Plaintiff Smith's arrest, there had been no prior complaints made against Defendant Scull. SMF ¶¶ 23-24. There is nothing in the record that would indicate that Defendants Dwelley, Walker, or the Town had actual or constructive knowledge of any risk that Defendant Scull posed regarding his use of arrest powers and/or the lawful use of force to effect an arrest.

## B. Plaintiffs' Claims Based on a Failure to Train or Supervise Cannot Survive Summary Judgment

The undisputed evidence in the factual record refutes any claims that Plaintiffs can meet the stringent standard of "deliberate indifference" to "obvious" deficiencies in training or supervision necessary to prove a supervisory or municipal liability claim based on this theory. A failure to train claim can succeed "[o]nly if the failure to train 'amounts to *deliberate indifference* to the rights of persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury . . . ." *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998) (emphasis in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-89, 391 (1989)).

To establish liability based on a failure to train, it is not sufficient "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *City of Canton*, 489 U.S. at 391. *See also Young v. City of Providence*, 404 F.3d 4, 27 (1st Cir. 2005) ("[T]he fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing."). A plaintiff must also prove that a supervisor's "deliberate indifference" to known deficiencies in training actually caused the police officers' violation of his/her constitutional rights. *Id.* at 391-92. The standard of fault for deliberate indifference is stringent and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). Moreover, "[s]howing that a single individual received inadequate training is insufficient for municipal liability to attach; the training program as a whole must be found faulty." *Calvi v. Knox Cnty.*, 470 F.3d 422, 429 (1st Cir. 2006).

8

Plaintiffs have not established a cognizable basis for a supervisory or municipal liability claim based on a failure to train under *Canton* and its progeny. *See, e.g. Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.") (citations omitted). Throughout discovery, Plaintiffs have not identified or provided evidence of any deficiencies in the Town's training program of Defendant Scull or other Machias police officers, despite direct inquiries. Plaintiffs did not depose Chief Dwelley or any other Town policymakers. There is nothing in the record to infer that the Town was on notice of any alleged deficiencies or that any of its training program was the moving force behind alleged constitutional injuries.

The training afforded to Machias police officers is comprehensive and ongoing and consistent with Maine law governing police officer training and certification. *See* SMF ¶ 36-38. Plaintiffs have not produced a scintilla of evidence demonstrating that the Machias Defendants acted with deliberate indifference with regard to the training of its officers regarding lawful arrests or the lawful use of force. *See Calvi*, 470 F.3d at 429. The only record evidence is to the contrary; all Machias police officers must attend the Maine Criminal Justice Academy where they receive mandatory training, including training on lawful arrests and the lawful use of force. SMF ¶ 36. Furthermore, Machias police officers receive additional training on the Machias policies and procedures regarding those topics, as well as annual training mandated by the Academy. SMF ¶ 34, 38. When Defendant Scull was hired as a Machias police officer, he was already a graduate of the Maine Criminal Justice Academy Basic Law Enforcement Training Program and was certified by the State to work as a full time law enforcement officer. Training on awful arrest powers and the lawful use of force in connection with arrests was part of the core

training Mr. Scull received at the MCJA. At the time of Plaintiff Smith's arrest, Defendant Scull was certified to work as a law enforcement officer by the State of Maine. Plaintiff Smith readily admitted in his deposition testimony that he has no knowledge about the training requirements for police officers in the State of Maine. SMF ¶ 43. The summary judgment record is devoid of any evidence to support a finding of deliberate indifference on the part of the Machias Defendants with regard to training.

Similarly, there is no evidence that the Town acted with deliberate indifference in supervising Mr. Scull. Liability under section 1983 "attaches if the responsible official 'supervises . . . a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.'" *See Estate of Bennett*, 548 F.3d at 176-77 (quoting *Camilo–Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir.1999)). When Defendant Scull was hired as a Machias police officer, he had already completed his training at the Maine Criminal Justice Academy and was certified to work as a full time law enforcement officer by the State of Maine. SMF ¶ 3. Moreover, he had completed some field training as a Maine State Police recruit and was supervised and field trained by Sgt. Walker when he started as a Machias officer. SMF ¶¶ 4-5. Contrary to Plaintiff's bald speculation, see Complaint ¶¶ 29-30, Defendant Scull was not on a probationary period with the Maine Criminal Justice Academy at the time of Plaintiff's arrest. Rather, he was certified to work as a full time law enforcement officer under State law, with no requirement that he be directly supervised during every shift. SMF ¶ 3, 6. Defendant Scull was on his probationary period of employment with the Town of Machias, but this is unrelated to his certification by the State to work independently as a police officer. SMF ¶¶ 7-8. His probationary period with the Town related

10

only to the Town's ability to terminate him without cause during his initial six months of employment. *Id.*

The mere fact that Defendant Scull was not directly supervised at the time of Plaintiff Smith's arrest does not amount to deliberate indifference on the part of the Chief or the Town. There is no evidence that the Chief, Sgt. Walker or the Town acted with deliberate indifference in supervising Defendant Scull or were on notice that more direct supervision was necessary, since he was already certified to work as a law enforcement officer by the State and had completed his field training with the Town. Moreover, once Chief Dwelley reviewed the videos of Plaintiff Smith's arrest, he suspended Defendant Scull and initiated an internal investigation. SMF ¶¶ 14-17. Sgt. Walker began the Town's investigation of the incident, but before he could complete it the Town decided to refer responsibility for the investigation to the Maine State Police. SMF ¶¶ 18-19. While the MSP investigation was still ongoing, Defendant Scull was terminated by the Town. No finding of cause was needed, because he was still a probationary employee. SMF ¶ 21.

Plaintiffs have not affirmatively connected Chief Dwelley, Sgt. Walker, or the Town's supervision of Defendant Scull to any alleged "volatile act or omission" by him. *See Estate of Bennet*, 548 F.3d at 177. Absent competent evidence to support Plaintiffs' municipal liability claims, Plaintiffs' bald assertions are insufficient to survive summary judgment. Plaintiffs cannot maintain a claim for municipal liability under section 1983 and the Court should grant summary judgment to the Machias Defendants.

### C. There is no evidence of an Unconstitutional Policy, Custom, or Practice

A municipality may not be held vicariously liable under § 1983 for a constitutional deprivation caused by an employee solely on the basis of its employer-employee relationship.

11

*See Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 690-91 (1978). In order to impose liability on a municipality, a plaintiff must demonstrate that the constitutional deprivation was the product of an official policy, or "a custom or practice … so 'well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Bisbal-Ramos v. City of Mayagüez*, 467 F.3d 16, 23-24 (1st Cir. 2006) (quoting *Silva v. Worden*, 130 F.3d 26, 31 (1st Cir. 1997). In addition, the "disputed 'policy' or 'custom' must also be the cause and moving force behind the deprivation of constitutional rights." *Silva*, 130 F.3d at 31.

Here, there is no evidence of the existence of an unconstitutional policy, custom or practice. The only record evidence shows that the Town of Machias' Police Department had policies in place governing the lawful use of arrest powers and the lawful use of force that complied with the minimum standards set by the State of Maine for such policies. SMF ¶ 32-33. Defendant Scull's alleged failure to follow a policy that the Town had in effect cannot be a basis of liability on the part of the Town. *See Canton*, 489 U.S. at 391, 109 S. Ct. at 1206 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

Plaintiffs allege that the Town, through its Police Department, had a policy of "hiring police officer [sic] with inadequate training and placing them on probationary periods to allow them to complete adequate training at a later date. Complaint ¶ 67. Plaintiff further alleges that "[d]uring the probationary period officers are required to be supervised . . . but they are often allowed to patrol on their own without adequate training or supervisor. *Id.* These assertions are nothing more than unfounded speculation and are insufficient to survive summary judgment. To withstand summary judgment, a bald assertion of an unconstitutional custom or culture is not

enough. *See Bennett v. City of Biddeford*, 364 F. Supp. 2d 1, 2 (D. Me. 2005) (granting summary judgment to defendants where plaintiff "provided the Court with no facts that would allow the Court to even infer the existence of [an unconstitutional] policy or custom."). Summary judgment is appropriate where a plaintiff has not offered any evidence that a municipality "carried out an unconstitutional policy in any instances other than the events about which he complains." *Id.* at 2-3.

There is nothing in the record to suggest that the Town has a policy of hiring police officers with inadequate training and allowing them to patrol unsupervised. To the contrary, the record establishes that at the time Defendant Scull was hired by the Town of Machias, he was already a graduate of the Maine Criminal Justice Academy Basic Law Enforcement Training Program and was certified to work as law enforcement officer by the State of Maine. SMF ¶ 3. The Town does have a policy of placing employees on a six month probationary period, but that is unrelated to the requirements imposed by the Maine Criminal Justice Academy before one can work as a law enforcement officer. SMF ¶¶ 7-8. The probationary period imposed by the Town governs the Town's ability to terminate an employee during the probationary period without cause. SMF ¶ 7. The record does not support Plaintiffs' assertion that the Town's policy regarding probationary employees amounts to deliberate indifference to Smith's constitutional rights. There is no connection between Defendant Scull's probationary period of employment with the Town and his training or certification as a law enforcement officer. Plaintiffs' conclusory allegations and speculation, unsupported by the factual record, are insufficient to survive a motion for summary judgment. *See Estate of Bennett*, 548 F.3d at 177-78.

Plaintiffs cannot meet the deliberate indifference standard or the causal requirement to establish municipal liability pursuant to section 1983. Throughout discovery and in response to

direct interrogatories seeking evidence to support their allegations, Plaintiffs have not identified a piece of admissible evidence of an unconstitutional policy of the Machias Police Department or the Town that resulted in Plaintiffs' alleged injuries. *See* SMF ¶¶ 40-41. There is also no evidence that any custom served as the basis or moving force behind Mr. Smith's alleged injuries. Without any factual support in the record, Plaintiffs' municipal liability claims cannot survive summary judgment. *See Bennett v. City of Biddeford*, 364 F. Supp. 2d at 2-3.

Prior to Mr. Smith's arrest and ensuing complaint, the Town had never received any complaints against Defendant Scull alleging that he used his arrest powers inappropriately or used an excessive amount of force in effecting arrests. SMF ¶¶ 23-24. With the exception of allegations in 2011 that did not involve Defendant Scull, Chief Dwelley had not received any prior claims alleging an inappropriate use of arrest powers by Machias police officers or an excessive use of force in effecting arrests. SMF ¶ 25. And when the allegations in 2011 came to light, they were immediately and fully investigated by Chief Dwelley. SMF ¶ 27. Following that investigation, the only officer identified in those allegations resigned his position. SMF ¶ 27. There is also no evidence of any secret, non-public settlements of these claims or any claims by the Town as alleged in Plaintiffs' Complaint. *See* Complaint ¶ 28, 66; SMF ¶¶ 28-29. This history is insufficient to put the Chief of Police or the Town on notice of an alleged unconstitutional policy or custom prior to the events of August 6/7, 2015. If anything, it demonstrates that the Chief and Town have proper procedures in place, fully investigate all complaints, and are prepared to discipline officers when complaints are substantiated. *See* SMF ¶ 39.

### V.        SUMMARY JUDGMENT ON COUNT X "DAMAGES" IS APPROPRIATE

Count X - Damages is a prayer for relief rather than a theory of liability or a cause of action. Accordingly, Count X should be dismissed as a separate cause of action. Nonetheless, the Machias Defendants are entitled to summary judgment on Plaintiffs' Damages claim because, as discussed above, there was no underlying constitutional violation and Plaintiffs cannot meet the standard for supervisory or municipal liability. Even if the underlying constitutional claims survive summary judgment, the Machias Defendants are still entitled to summary judgment on Plaintiffs' punitive damages claim.  Punitive damages in a § 1983 civil rights action can be granted "only if 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Concepcion Chaparro v. Ruiz-Hernandez*, 607 F.3d 261, 268 (1st Cir. 2010) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625 (1983)).  The Plaintiff has produced no evidence that the Machias Defendants acted "in the face of a perceived risk that [their] actions [would] violate federal law." *Cabral v. U.S. Dep't of Justice*, 587 F.3d 13, 24-25 (1st Cir. 2009) (citations omitted).

Moreover, the Town is entitled to summary judgment on Plaintiffs' punitive damages claim because a municipality is immune from punitive damages under 42 U.S.C. § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  *See also Chestnut v. City of Lowell*, 305 F.3d 18, 21 (1st Cir. 2002) ("Punitive damages are, in this sense, a windfall—and one that here would come at the expense of innocent taxpayers of the City, the very ones for whose benefit *City of Newport* adopted the rule giving municipalities such an immunity."). To the extent Plaintiffs' claims against Chief Dwelley and Sgt. Walker are supervisory or official capacity claims, they are entitled to the same immunity from punitive damages as the Town.

### VI. TO THE EXTENT PLAINTIFFS ALLEGE STATE LAW TORT CLAIMS AGAINST THE MACHIAS DEFENDANTS, THOSE CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' Complaint alleges state law tort claims against Defendant Scull. Plaintiffs have not asserted any state law tort claims against Defendants Dwelley, Sgt. Walker, or the Town. Out of an abundance of caution, to the extent the Complaint is read as asserting such claims, they fail as a matter of law. As a preliminary matter, based on the undisputed facts and for the reasons discussed above, Plaintiffs cannot establish a *prima facie* case for each of their state law tort claims against the Machias Defendants. *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759, 763 ("In order to survive summary judgment, a plaintiff in a tort case must point to evidence in the record to support each element of his or her claim."). In order to establish a *prima facie* claim, there has to be a causal connection between Plaintiffs' alleged injuries and the alleged tortious conduct of the Machias Defendants.  Plaintiff cannot, as a matter of law, establish causation.  If "there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff," then the defendant is entitled to summary judgment.  *Estate of Smith v. Salvesen*, 2016 ME 100, ¶ 21, 143 A.3d 780. Here, there is insufficient evidence for a jury to reasonably find or infer that there was a causal connection between Plaintiffs' alleged damages and the actions of the Machias Defendants.  There has to be proof that "there is some reasonable causal connection demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 17, 60 A.3d 759, 763.  Here, a jury could not find proximate cause without "speculation or conjecture" and therefore the Machias Defendants are entitled to summary judgment on Plaintiff's state law tort claims as a matter of law. *See id.* ¶ 19.

Even assuming *arguendo* that Plaintiffs could establish a *prima facie* case for each tort, Chief Dwelley and Sgt. Walker are entitled to immunity under the MTCA. Plaintiffs' state law tort claims are governed by the Maine Tort Claims Act ("MTCA"). *See* 14 M.R.S.A. §§ 8101, *et seq.* Governmental employees are entitled to personal immunity under the MTCA from civil liability for "performing or failing to perform any discretionary function or duty . . . ." 14 M.R.S.A. §8111(1)(C). This is true "whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid." *Id.* The MTCA also confers absolute immunity on governmental employees for intentional acts or omissions that arise in the course and scope of their employment. 14 M.R.S.A. § 8111(1)(E). The only exception to the grant of immunity under Section 8111(1)(E) is for intentional acts performed in "bad faith." *Id.*

Moreover, the Town is absolutely immune under the MTCA. 14 M.R.S.A. § 8103 ("Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages."). For purposes of immunity under the MTCA, a governmental entity includes "political subdivisions," such as a city or town. 14 M.R.S. § 8102(2), (3). Defendant Town of Machias is a "governmental entity" within the meaning of the MTCA. Section 8104-A sets forth the limited exceptions to governmental entity immunity. *See* 14 M.R.S.A. § 8104-A. In interpreting the exceptions to immunity, courts "start with the premise that immunity is the rule and exceptions to immunity are to be strictly construed." *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 5, 728 A.2d 673; *Estate of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84, 87.

Plaintiffs' state law tort claims against the Town must fail as a matter of law because none of the alleged acts of the Town implicates a duty owed or conduct that falls within the enumerated

exceptions to governmental liability. *See* 14 M.R.S.A. § 8103, 8104-A. There is no traditional vicarious liability available against governmental entities as employers, other than under § 8104-A. Moreover, the Town has not waived its state tort immunity through the purchase of any policy of liability insurance. *See* 14 M.R.S.A. § 8116 ("If the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage."); SMF ¶¶ 44-46. As a member of the Maine Municipal Association Property & Casualty Pool ("MMA"), a self-insured municipal risk pool, the Town's coverage is limited to areas where the Town is not immune. SMF ¶ 45. This Court has previously considered identical coverage with the MMA, and has concluded that it did not constitute a waiver of immunity. *See, e.g. Steeves v. City of Rockland*, 600 F. Supp. 2d 143, 180 (D. Me. 2009), *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1237-38 (D. Me. 1996). The language in the Town's MMA Coverage Certificate is identical to the language considered by this Court in *Steeves* and *Comfort* and found not to waive immunity. *See Steeves*, 600 F. Supp. 2d at 180; *Comfort*, 924 F. Supp. At 1237-38; SMF ¶ 45. The Town of Machias has not waived its immunity and therefore, to the extent Plaintiffs' state law tort claims are against the Town, they are barred under the MTCA.

## CONCLUSION

For the foregoing reasons, the Machias Defendants request that the Court enter summary judgment in their favor as to all counts of Plaintiffs' Complaint against them.

Dated at Portland, Maine, this 21st day of June, 2018.

*/s/ Edward R. Benjamin, Jr.*
*/s/ Kasia S. Park*
Edward R. Benjamin, Jr.
Kasia S. Park

                *Attorneys for Defendants Town of Machias,*
                *Machias Police Department, Chief Grady*
                *Dwelley, and Sgt. Wade Walker*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2018, I electronically filed the foregoing Defendants Town of Machias, Machias Police Department, Chief Grady Dwelley, and Sgt. Wade Walker's Motion for Summary Judgment with Incorporated Memorandum of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

                                     */s/ Kasia S. Park*
                                     Kasia S. Park

                                     *Attorney for Defendants Town of Machias,*
                                     *Machias Police Department, Chief Grady*
                                     *Dwelley, and Sgt. Wade Walker*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
kpark@dwmlaw.com