UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JOSHUA SMITH and MONICA POLCHES, <br><br>   Plaintiffs, <br><br>   vs. <br><br> TOWN OF MACHIAS, et al., <br><br>   Defendants | Civil No. 17-0320-GZS |

### DEFENDANT WILLIAM SCULL'S MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

During the evening of August 6, 2015, Defendant William Scull, in his capacity as a Machias Police Officer, was dispatched to respond to a citizen complaint. The complainant had reported that Plaintiff Joshua Smith was creating a disturbance and was refusing to leave the complainant's property. Mr. Scull conducted an investigatory stop of Mr. Smith, during the course of which Mr. Smith was erratic and non-compliant. Eventually – and despite multiple warnings – Mr. Scull arrested Mr. Smith for disorderly conduct. During the course of these events, the only force used by Mr. Scull was that which was reasonably necessary under the circumstances. Based on the summary judgment record, the Plaintiffs fail to present any viable state or federal claims. In any event, Mr. Scull is protected from liability by qualified immunity, discretionary function immunity, or intentional act immunity. For these reasons, all of which are discussed below, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Mr. Scull requests summary judgment on all counts in the Plaintiffs' Complaint.

### BACKGROUND

#### I.   Facts

The factual background for the Motion for Summary Judgment is set forth in the accompanying Statement of Material Facts, which is hereby incorporated by reference.

## II. Procedural Posture

The Plaintiffs commenced this action by a Complaint filed in the Washington County Superior Court on August 4, 2017. Defendants Town of Machias, Machias Police Department, Chief Grady Dwelley and Sergeant Wade Walker removed the case to this Court by a notice dated August 25, 2017.

The Complaint alleges eight claims against Mr. Scull.[1] Mr. Smith's state-law tort claims include: assault and battery (Count II); false arrest (Count III); false imprisonment (Count IV); malicious prosecution (Count V); and intentional infliction of emotional distress (Count VI). Mr. Smith also asserts civil rights claims against Mr. Scull under 5 M.R.S. § 4682, et seq. (Count I) and 42 U.S.C. § 1983 (Count VII) based on an alleged use of force that violated the Fourth and Fourteenth Amendments to the United States Constitution. Finally, the Complaint contains a loss of consortium claim brought by Mr. Smith's spouse, Plaintiff Monica Polches.

Mr. Scull filed an Answer denying the material allegations of the Complaint and asserting numerous affirmative defenses, including: failure to state a cognizable claim; qualified immunity; and immunity under the Maine Tort Claims Act.

## STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(c), summary judgment must be granted in favor of the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In construing Rule 56(c), the United States Court of Appeals for the First Circuit has stated:

---

[1] Technically, there are nine counts directed at Mr. Scull. However, Count X simply describes the damages the Plaintiff is seeking. Since the "damages count" does not state an independent claim for relief, the Court should grant Mr. Scull summary judgment with regard to that count along with the other counts. *See Frank v. L.L. Bean, Inc.*, 352 F. Supp. 2d 8, 13 (D. Me. 2005) (holding that a claim for punitive damages "is not a separate and distinct cause of action under Maine law. Rather, it is a type of remedy.").

> When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect *brevis* disposition."
>
> .....
>
> This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. . . . "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." . . . This requirement has sharp teeth: the plaintiff "must present definite, competent evidence to rebut the motion."

*Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted) (cited in *Halasz v. University of New England,* 816 F. Supp. 37, 38-39 (D.Me. 1993)).

## ARGUMENT

### I. THE PLAINTIFF'S CIVIL RIGHTS CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT BECAUSE THEY EITHER FAIL ON THEIR MERITS OR MR. SCULL IS PROTECTED BY QUALIFIED IMMUNITY.

In Count VII of the Complaint, Mr. Smith asserts a claim under 42 U.S.C. § 1983 alleging that his federal constitutional rights were violated as a result of the incident with Mr. Scull on August 6, 2015. Specifically, Mr. Smith refers to alleged use of excessive force in violation of his Fourth and Fourteenth Amendment rights. Given these allegations, Mr. Scull infers that Mr. Smith's claims all fall under the rubric of the Fourth Amendment, and that Mr. Smith's reference to the Fourteenth Amendment is simply to establish an application of the Fourth Amendment to municipal actors.[2] *See Alexis v. McDonald's Rest.*, 67 F.3d 341, 349 (1st Cir. 1995) (seizures analyzed under the Fourth Amendment); *Graham* v. *Connor*, 490 U.S. 386, 394 (1989) (when a claim of excessive force is asserted as a result of an arrest or investigatory stop of a free citizen, the claim is analyzed under the Fourth Amendment).

---

[2] Even if Mr. Smith was asserting due process claims, it appears that such claims cannot be maintained under current precedent of the United States Court of Appeals for the First Circuit. The First Circuit has held that where a state recognizes the common-law tort of false arrest (as does Maine), a plaintiff is barred from pursuing either a substantive or procedural due process claim under Section 1983 in the federal court. *See Reid v. New Hampshire*, 56 F.3d 332, 336 n.8 (1st Cir. 1995).

It is not clear whether Mr. Smith intended for the Maine civil rights claim in Count I to simply duplicate the federal claim in Count VII or whether he intended to also assert a claim for unlawful seizure.[3] Out of an abundance of caution, Mr. Scull will address the latter possibility.

### A. The record evidence does not support the existence of a Fourth Amendment claim of unlawful seizure.

The United States Supreme Court has held that a law enforcement officer may briefly detain an individual for questioning, such as during an investigatory stop, if the officer has "reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also United States v. Zapata*, 18 F.3d 971, 975 (1st Cir. 1994). It is undisputed that the gas station attendant asked Mr. Smith to leave the property and he refused. Armed with this information, Mr. Scull clearly had reasonable suspicion to believe that criminal activity was "afoot." Mr. Scull explained to Mr. Smith a number of times that he was not under arrest, but that he was being detained so Mr. Scull could serve him with a trespass notice. Moreover, Mr. Scull was detaining Mr. Smith only long enough to give Mr. Smith a written trespass warning, a process that was prolonged only by Mr. Smith's erratic and uncooperative behavior. Therefore, Mr. Scull's initial stop and questioning of Mr. Smith did not violate his constitutional rights as a matter of law.

Similarly, there can be no question that Mr. Scull's arrest of Mr. Smith was supported by probable cause. "The 'probable cause' analysis entails 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not [an assessment of] the officer's state of mind at the time the challenged action was taken.'" *Alexis*, 67 F.3d at 349 (quoting *Maryland* v. *Macon*, 472 U.S. 463, 470-71 (1985) (internal quotation marks omitted)). Probable cause exists if "the facts and circumstances within [the officer's]

---

[3] To the extent the claim in Count I simply duplicates the claim in Count VII, the arguments made on summary judgment with regard to the federal civil rights claim apply with equal force to the Maine Civil Right Act claim set forth in Count I. *See Morelli v. Webster*, 552 F.3d 12, 17 (1st Cir. 2009) (citing *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994)).

knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." *Rivera* v. *Murphy*, 979 F.2d 259, 263 (1st Cir. 1992). "And, moreover, though probable cause requires more than mere suspicion, it does not require the same quantum of proof as is needed to convict." *Logue v. Dore*, 103 F.3d 1040, 1044 (1st Cir. 1997) (citing *United States* v. *Aguirre*, 839 F.2d 854, 857-58 (1st Cir. 1988)). It is undisputed that Mr. Scull warned Mr. Smith on more than one occasion that his loud and abusive behavior would result in an arrest for disorderly conduct[4] if he did not desist. It is also undisputed that after one of these warnings Mr. Smith persisted in shouting obscenities at Mr. Scull. Therefore, based on his own observations of Mr. Smith's conduct, Mr. Scull had probable cause to arrest Mr. Smith. For these reasons, to the extent Mr. Smith intended to assert a Fourth Amendment seizure claim in Count I, Mr. Scull is entitled to summary judgment.

### B. Mr. Scull's alleged actions cannot support a claim of excessive force under the Fourth Amendment because his alleged actions were not objectively unreasonable as a matter of law.

When a claim of excessive force is asserted as a result of an arrest or investigatory stop of a free citizen, the claim is analyzed under the Fourth Amendment. *Graham*, 490 U.S. at 394. A person can state a viable excessive force claim under the Fourth Amendment only if he or she can demonstrate that the police officer's actions were not objectively reasonable, viewed in light of the facts and circumstances confronting the officer and without regard to the officer's underlying intent or motivation. *Id.* at 397. Whether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing. *Id.* at 396. The Supreme Court has emphasized that the officer's actions must be analyzed from the perspective of "a reasonable officer on the scene,

---

[4] Pursuant to 17-A M.R.S. § 501-A(1)(A)(1), "[a] person is guilty of disorderly conduct if … [i]n a public place, the person intentionally or recklessly causes annoyance to others by intentionally … [m]aking loud and unreasonable noises…." Disorderly conduct is a Class E crime. § 501-A(3).

rather than with the 20/20 vision of hindsight." *Id.* (citations omitted). Moreover, the Supreme Court has held that "'not every push or shove'" will reach the level required for a viable excessive force claim. *Id.* (citation omitted); *Gaudreault* v. *Salem*, 923 F.2d 203, 205 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The United States Court of Appeals for the First Circuit's application of these standards suggests that Mr. Smith's claim does not rise to the level of a Fourth Amendment violation. For example, in *Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312 (1st Cir. 2015), the plaintiff was arrested on charges of rioting and causing aggravated damages after a colloquy with a law enforcement officer that occurred during a tumultuous student protest. *Id.* at 316. The officer believed the plaintiff was involved in the protest and he confronted her. *Id.* When the plaintiff "expressed her displeasure" with the officer's tone of voice, the officer shoved her face-first against a wall and placed handcuffs on her. *Id.* The plaintiff brought Fourth Amendment claims against the officer and others for unlawful arrest and use of excessive force. The district court granted the officer summary judgment and the plaintiff appealed.

With regard to the excessive force claim, the First Circuit affirmed summary judgment. *Id.* at 326-27. The Court applied the Fourth Amendment test adopted in *Graham* and concluded that the plaintiff's allegations failed to generate a viable constitutional claim:

> Assuming the encounter occurred as Fernández describes – as we must in the summary judgment context – Fernández was seemingly arrested for, at best, obstructing a police investigation and/or disorderly conduct by "disrespecting" Rosado and talking back to her. Either, obviously, is not a severe crime, and – at least based on this version of events – Fernández never posed an immediate threat to Rosado or others. As such, only a minimal level of force by Rosado would be reasonable under the circumstances. Yet even with this low threshold, Plaintiffs are unable to establish a constitutional violation. In effectuating the arrest, Rosado shoved Fernández face-first against a wall and proceed to handcuff her left wrist. There is no evidence in the record that this technique deviated from standard police practice. *See* [*Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006)] ("Standard police practice [in Knox County, Maine] called for cuffing an arrestee's hands behind her back and [the officer's] decision not to deviate from this practice was a judgment call, pure and simple. . . . That is the end of the story."). And, even if it did, the Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's

> chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal quotation marks). Rosado's shove of Fernández may have been unnecessary, but it was not unreasonable.

*Id.* at 326-27.

      Mr. Scull did not use unnecessary force in dealing with Mr. Smith. Mr. Smith's confrontational and erratic behavior – exemplified by his refusal to leave the Irving gas station – precipitated Mr. Scull's presence at the gas station in the first place. Mr. Smith was intoxicated and continued his erratic behavior in his dealings with Mr. Scull – including raising his voice to the officer, swearing at the officer, and repeating questions to the officer even after the questions had been answered many times. In addition, Mr. Smith kept getting close to Mr. Scull as the latter was attempting to complete the trespass notice, which caused Mr. Scull concern for his safety in light of Mr. Smith's intoxication and the fact that he was considerably bigger than Mr. Scull. After being specifically told several times that he was not free to leave, Mr. Smith nonetheless proceeded to disobey those instructions by walking away from Mr. Scull while Mr. Smith was still handcuffed. Mr. Scull attempted to redirect Mr. Smith and the two men ended up falling to the ground together. Mr. Scull then helped Mr. Smith to his feet. Since Mr. Smith does not complain of any other offensive use of force, the force used by Mr. Scull was not unnecessary.

      Even if the amount of force used was more than necessary to detain Mr. Smith, the force allegedly used by Mr. Scull could not be viewed as objectively unreasonable. When Mr. Smith abruptly decided to disobey several orders from Mr. Scull by walking away from the officer, Mr. Scull had to act quickly to redirect Mr. Smith back to the police cruiser. Mr. Scull relied upon his Maine Criminal Justice Academy training by employing a redirection technique that included holding the suspect's arm and shoulder and using a leg to redirect the suspect's movement. When Mr. Smith lost his balance, Mr. Scull attempted to ease him to the ground. Mr. Smith's weight was greater than Mr. Scull expected and the two both ended up falling to the ground.

While Mr. Smith's suspected crime (criminal trespass) may not have been particularly serious, Mr. Scull could not be sure of the threat Mr. Smith posed given his size, intoxication, and erratic behavior. Moreover, there is no doubt that Mr. Smith intended to leave the scene of the investigatory stop in handcuffs despite numerous orders from Mr. Scull to remain where he was. Therefore, under the Fourth Amendment standard generally and in light of the *Graham* factors in particular, Mr. Smith's actions were objectively reasonable. He is entitled to summary judgment on Counts I and VII.

### C. Mr. Scull is protected from liability by qualified immunity.

Mr. Scull is entitled to judgment on the Plaintiffs' civil rights claims based on qualified immunity. Qualified immunity is more than an affirmative defense; it affords a governmental employee "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citation omitted). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court has articulated a two-part inquiry to determine the applicability of qualified immunity: "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The First Circuit has described the second step of this inquiry as having two aspects:

> One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation. To overcome qualified immunity, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Indeed, [i]t is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

*Id.* (internal quotation marks and citations omitted).

In the qualified immunity analysis, "clearly established law" is not measured by broad generalizations about constitutional law. Rather, as the First Circuit has stated:

> The relevant inquiry is whether it would be clear to a reasonable officer that his conduct would be unlawful in the situation he confronted, and this inquiry must be taken in light of the case's specific context, not as a broad general proposition.

*Buchanan v. Maine*, 469 F.3d 158, 168-69 (1st Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). When the question of whether certain conduct is permissible under the law is close, "clearly established law" does not exist: "The debatable nature of the question argues in favor of qualified immunity." *Savard v. Rhode Island*, 338 F.3d 23, 31-32 (1st Cir. 2003) (en banc) (citing *Goyco de Maldonado v. Rivera*, 849 F.2d 683, 688 (1st Cir. 1988) (stating that an official "need show no more than that [the question is close] to prevail on his qualified immunity defense"); *Vazquez Rios v. Hernandez Colon*, 819 F.2d 319, 328 (1st Cir. 1987) (noting that "the closeness of the call suggests that [the law] could not have been 'clearly established'")).

Moreover, the Supreme Court has recently clarified the "clearly established constitutional right" inquiry in a series of cases. In *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), the Supreme Court held that "clearly established" for purposes of qualified immunity means that the contours of the constitutional right are "sufficiently clear" that "*every* 'reasonable official would have understood that what he is doing violates that right.'" (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court has noted that specificity is particularly important in the Fourth Amendment context:

> "[T]he Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix* v. *Luna*, 577 U. S. ____, ____, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (*per curiam*) (internal quotation marks omitted). Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Id.*, at ____, 136 S. Ct. 305, 193 L. Ed. 2d 255, at 260 (internal quotation marks omitted and emphasis deleted).

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018). In short, the Supreme Court's decisions indicate that "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citations omitted).

At the time Mr. Scull attempted to redirect Mr. Smith with a technique Mr. Scull had learned at the Maine Criminal Justice Academy, it was not clearly established that an officer was precluded from using such a technique to prevent a handcuffed and intoxicated suspect from leaving the scene of an investigatory stop. The technique involves the officer holding the suspect's arm and shoulder and using a leg to redirect the suspect's movement. Mr. Scull has found no Supreme Court case that indicates that such a use of force violates the Fourth Amendment. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012) (referring to the Court's own precedents to determine if a right has been "clearly established" for the purposes of qualified immunity); *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (accord). In addition, to the extent First Circuit precedent could be considered the dispositive source of clearly-established law in this circumstance, Mr. Scull has located no decisions from that court that would "place[] the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Reichle*, 566 U.S. at 665-66 (assuming *arguendo* that "controlling Court of Appeals' authority could be a dispositive source of clearly established law in the circumstances of this case"). Therefore, in the context of this case, it was not clearly established that the force of which Mr. Smith complains violated the Fourth Amendment.

Even if the law implicated by Mr. Smith's claims was clearly established, a reasonable officer could have believed that Mr. Scull's actions were lawful. As the First Circuit has articulated, the qualified immunity analysis provides protection for mistaken judgments by public officials:

> The third prong of the qualified immunity analysis recognizes that "law enforcement officials will in some cases reasonably but mistakenly conclude that [their conduct] is . . . lawful"; "in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable."

*Buchanan*, 469 F.3d at 169 (quoting *Anderson* v. *Creighton*, 483 U.S. 635, 641 (1987)).

Even if Mr. Scull was mistaken with regard to use of the redirecting technique, a reasonable officer nonetheless could have believed that his actions were lawful. It is undisputed that the technique Mr. Scull employed was taught to him at the Maine Criminal Justice Academy. Mr. Scull was simply trying to redirect Mr. Smith's movement – a maneuver that would likely have been entirely unremarkable if Mr. Smith had not lost his balance and if Mr. Scull had been able to control his fall to the ground. Any reasonable officer could have believed that the force used would not have violated Mr. Smith's constitutional rights.

Finally, to the extent Mr. Smith intended to assert a Fourth Amendment seizure claim in Count I, Mr. Scull is protected by qualified immunity. Even if Mr. Scull was mistaken with regard to the grounds for his investigatory stop and arrest of Mr. Smith, a reasonable officer could have believed that those actions would not violate Mr. Smith's constitutional rights. Mr. Scull had reliable information from the gas station clerk and from Mr. Smith himself that Mr. Smith had refused to leave private property – therefore, he had a reasonable basis to suspect Mr. Smith of criminal activity. Similarly, Mr. Smith's loud and abusive conduct – which continued even after warnings from Mr. Scull – provided Mr. Scull with a reasonable basis to believe he had probable cause for arrest for disorderly conduct. For all these reasons, Mr. Scull is entitled to summary judgment on all of Mr. Smith's civil rights claims in Counts I and VII because he is protected by qualified immunity.

## II. MR. SCULL IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' STATE LAW CLAIMS DUE TO THE FAILURE TO STATE VIABLE CLAIMS AND MR. SCULL'S ENTITLEMENT TO IMMUNITY.

Mr. Smith alleges state law claims of assault and battery, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress ("IIED") against Mr. Scull.  Even taking Mr. Smith's allegations as true, Mr. Scull cannot be held liable for

any of these claims as a matter of law. In any event, Mr. Scull is protected by absolute immunity with regard to all tort claims.

### A. Since Mr. Smith's arrest was supported by probable cause, he cannot establish viable claims of false imprisonment, false arrest, or malicious prosecution.

The United States Court of Appeals for the First Circuit has observed that under Maine law, "in order to establish a tort claim of false arrest and false imprisonment 'the authority upon which Plaintiff is confined must be unlawful.'" *Santoni v. Potter*, 369 F.3d 594, 603 (1st Cir. 2004) (citing *Nadeau v. State*, 395 A.2d 107, 116 (Me. 1978); *Jedzierowski v. Jordan*, 172 A.2d 636, 637 (Me. 1961)). Similarly, to prevail on a malicious prosecution claim, a plaintiff must demonstrate that "criminal proceedings were instituted against him without probable cause and with malice [and] that he received a favorable termination of the proceedings." *Nadeau v. State*, 395 A.2d 107, 116 (Me. 1978). Therefore, if Mr. Scull had probable cause to arrest Mr. Smith for disorderly conduct, Mr. Smith's claims of false arrest, false imprisonment, and malicious prosecution fail as a matter of law.

As discussed more fully above, Mr. Scull had probable cause to believe that Mr. Smith had committed or was committing the crime of disorderly conduct. *See supra* at 4-5 (Argument I(A)). Maine law authorized Mr. Scull to take Mr. Smith into custody for committing a Class E crime in his presence. 17-A M.R.S. § 15(1)(B). Similarly, Mr. Scull had sufficient reasonable suspicion that Mr. Smith had engaged in criminal activity to justify an investigative stop. *See supra* at 4-5 (Argument I(A)). Therefore, Mr. Scull is entitled to summary judgment on Mr. Smith's tort claims of false arrest, false imprisonment, and malicious prosecution.

### B. Mr. Scull cannot be held liable for assault and battery based on the record facts of his interaction with Mr. Smith.

Mr. Smith asserts that he was assaulted by Mr. Smith.[5] As the record facts establish, the only use of force about which Mr. Smith complains occurred when Mr. Scull was detaining Mr. Smith to serve him with a trespass notice. Specifically, as Mr. Smith was walking away from Mr. Scull – despite numerous instructions to remain where he was – Mr. Scull made contact with him in an effort to redirect Mr. Smith back to the police cruiser.

"It has long been recognized that 'the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Dean v. Worcester*, 924 F.2d 364, 368-69 (1st Cir. 1991) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Moreover, under Maine law "[a] law enforcement officer is justified in using a reasonable degree of nondeadly force upon another person … [w]hen and to the extent that the officer reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person, unless the officer knows that the arrest or detention is illegal…." Finally, the First Circuit has held that "[u]nder Maine law, the torts of assault and battery by a law enforcement officer require either a false arrest or the use of excessive force during or after taking an individual into custody." *Santoni*, 369 F.3d at 603 (citing *Bale v. Ryder*, 290 A.2d 359, 360 (Me. 1972)).

The summary judgment record does not support Mr. Smith's claim of assault. As discussed more fully above, Mr. Scull's arrest of Mr. Smith was supported by probable cause. Moreover, Mr. Scull was justified in using some force to effect and maintain the investigatory stop, including force to prevent Mr. Smith from leaving the stop before its purpose was

---

[5] Mr. Smith denotes his claim in Count II as "Assault and Battery," although he does not specifically reference battery in the body of the supporting paragraphs. (Complaint ¶¶ 34-37). As one commentator has noted, "the Law Court has used the term *assault and battery* idiomatically to refer to a consummated battery." *See* Simmons, Zillman and Gregory, *Maine Tort Law*, § 1.04 at 1-8 (2018 Ed.). For ease of reference, Mr. Scull will adopt Mr. Smith's terminology ("assault") to refer to all claims in this count, including a battery.

completed. Finally, as discussed above, the force used by Mr. Scull – which involved a redirection technique taught at the Maine Criminal Justice Academy – was not excessive. Mr. Scull is entitled to summary judgment with regard to Count II.

### C. Mr. Smith's IIED claim fails as a matter of law since Mr. Scull did not engage in any "extreme and outrageous" conduct.

In *Champagne v. Mid-Maine Medical Center*, 1998 ME 87, 711 A.2d 842, the Maine Law Court described succinctly what a plaintiff must show to prevent summary judgment on an IIED claim:

> a plaintiff must present facts tending to show that the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its conduct; that "the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; that the actions of the defendant caused the plaintiff's emotional distress; and that the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

*Id*. ¶ 15 (citations omitted). The Law Court has also held that "[i]n the context of an IIED claim, 'it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery, or whether it is necessarily so.'" *Id*. ¶ 16 (quoting *Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 616 (Me. 1996) (citation omitted)).

In a slightly different context, the Law Court has held that use of force as part of an arrest does not constitute "wanton and oppressive" conduct. In *Leach v. Betters*, 599 A.2d 424, 425 (Me. 1991), the plaintiff was arrested for obstructing governmental administration when she complained about the manner in which police officers – including the defendant – were treating her fiancé during the course of a motor vehicle stop. The plaintiff alleged the officers picked her up and threw her on the trunk of the car, yanked her arms behind her, and placed her in handcuffs. *Id*. She sued two officers alleging that they used an unreasonable amount of force. *Id*. The Law Court affirmed summary judgment in favor of the officers based on discretionary function immunity under the Maine Tort Claims Act. *Id*. In doing so, the Law Court rejected the

plaintiff's argument – based on 14 M.R.S. § 704 – that the immunity did not apply if the officers acted wantonly or oppressively:

> Assuming that section 704 remains in effect and vital after the enactment of the Maine Tort Claims Act, and assuming that the unreasonable use of force constitutes wanton and oppressive conduct, the present case fails to generate a genuine issue of fact. Even when viewed in the light most favorable to the plaintiff, the evidence would not support a judgment based on wanton or oppressive conduct.

Id. at 426 (citation omitted).

The summary judgment record does not support Mr. Smith's claim of IIED. There is simply no evidence of conduct by Mr. Scull that was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." Mr. Scull's investigatory stop of Mr. Smith was based on a report – which was corroborated by Mr. Smith – that Mr. Smith was asked to leave the gas station property and refused to do so. Mr. Scull's arrest of Mr. Smith was based on probable cause – as Mr. Scull warned Mr. Smith on multiple occasions that his loud and abusive behavior could result in arrest for disorderly conduct and Mr. Smith persisted with the behavior. Finally, Mr. Scull's effort to redirect Mr. Smith back to the police cruiser for the trespass warning does not – as a matter of law – constitute wanton or oppressive conduct or any other conduct that rises to the level of "extreme and outrageous." Mr. Scull is entitled to summary judgment on Count VI.

### D. Mr. Smith's tort claims are, in any event, barred by Mr. Scull's absolute immunity.

Even if Mr. Smith could state viable tort claims, his claims are barred by the immunity provisions of the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101-8118 (2003 & Supp. 2017) ("the Act"). The Act confers upon governmental employees absolute immunity with regard to discretionary functions or with regard to intentional acts that are not taken in bad faith. § 8111(1)(C) & (E); *Carroll v. City of Portland*, 1999 ME 131, ¶ 6, 736 A.2d 279 (emphasizing that that discretionary function immunity is absolute); *Grossman v. Richards*, 1999 ME 9, ¶ 12, 722 A.2d 371 (holding that Section 8111(1)(E) "provides absolute immunity for, *inter alia*, a

government employee's intentional, good-faith acts or omissions"); *see also Jackson v. Town of Waldoboro*, 751 F. Supp. 2d 263, 276 (D. Me. 2010) ("Section 8111(1) of the MTCA confers absolute immunity from civil liability to governmental employees who, *inter alia*, are performing 'discretionary' functions and/or 'intentional act[s] or omission[s] within the course and scope of employment,' unless those intentional (in)actions are 'found to have been in bad faith.'") (citations omitted).  Moreover, "discretionary immunity…applies unless the defendants' conduct 'clearly exceeded, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity as [police officers].'" *Polley v. Atwell*, 581 A.2d 410, 414 (Me. 1990) (emphasis in original).

In *Roberts v. State*, 1999 ME 89, ¶ 10, 731 A.2d 855, the Maine Law Court applied discretionary function immunity to reject an assault claim against a corrections officer.  The plaintiff in *Roberts* alleged that he was injured when a prison guard closed a cell door on his hand, severing a finger.  In deciding that the alleged conduct fell within the ambit of discretionary function immunity, the Law Court reasoned as follows:

> [C]orrections is a basic governmental program and that the supervision of inmates is essential to a corrections program. The supervision necessarily involves the exercise of judgment by corrections officers, including the discretionary decision of when to order an inmate to his cell. That discretionary decision also includes the shutting of a cell door when the prisoner has failed to shut it or the door has failed to shut. Allenwood had the lawful authority to supervise Roberts. The four-factor test compels the conclusion that Allenwood's alleged tortious acts were performed as part of a discretionary function. Therefore, both the State and Allenwood are immune from liability on Roberts' claim that his injury resulted from Allenwood's action in shutting the cell door.

*Id*. ¶ 10, 731 A.2d at 857-58.

This Court has similarly held that "[a] law enforcement official's use of force is a discretionary act." *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1236 (D. Me. 1996). As a consequence, a police officer's use of force is subject to absolute immunity absent conduct "'so egregious as to clearly exceed any discretion the officer[] could have possessed under the circumstances.'" *Berube v. Conley*, 506 F.3d 79, 86 (1st Cir. 2007) (quoting *Dimmitt v.*

*Ockenfels*, 220 F.R.D. 116, 125 (D. Me. 2004)). Moreover, an officer's decision to effectuate a warrantless arrest is also a discretionary act. *See, e.g., Hegarty v. Somerset County*, 848 F. Supp. 257, 269 (D. Me. 1994), *aff'd in part, remanded in part on other grounds*, 53 F.3d 1367 (1st Cir. 1995).

Mr. Scull's alleged actions all fall within the scope of his discretion as a law enforcement officer. As discussed above, Mr. Scull reasonably believed that he had reasonable suspicion to detain Mr. Smith as part of an investigatory stop. Similarly, Mr. Scull reasonably believed the elements for disorderly conduct existed given his warning to Mr. Smith and Mr. Smith's persistent loud and abusive actions. Finally, the force he used in an effort to prevent Mr. Smith from leaving the scene of the investigatory stop was reasonable under the circumstances in light of Mr. Smith's intoxication and his erratic behavior. Even if the force Mr. Scull used could be viewed as more than was necessary, it was not more than Mr. Scull reasonably thought was necessary.

Lastly, even if the alleged acts were not discretionary, they are nonetheless protected by intentional act immunity. § 8111(1)(E). As discussed above, the alleged actions all fell within Mr. Scull's duties as a police officer. In addition, there are no facts in the record to suggest that Mr. Scull's alleged actions were motivated by ill will, bad faith, or improper motive. For all these reasons, Mr. Scull is entitled to summary judgment on all of Mr. Smith's tort claims because he is protected by absolute immunity for discretionary functions and intentional actions.

### III. MS. POLCHES' LOSS OF CONSORTIUM CLAIM FAILS AS A MATTER OF LAW.

Ms. Polches has asserted a claim for loss of consortium under 14 M.R.S. § 302. The Law Court has held that a claim under Section 302 is subject to the same rules, limitations and defenses as the alleged injured spouse's underlying tort claims. *See Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶¶ 23-28, 960 A.2d 1188. Therefore, the rules, limitations and defenses

discussed above with regard to Mr. Smith's tort claims apply with equal force to bar Ms. Polches' loss of consortium claim.

Finally, to the extent Ms. Polches seeks loss of consortium arising out of Mr. Smith's civil rights claims, her claim fails as a matter of law. Although it appears that the First Circuit has not directly addressed this issue, other circuit courts of appeals have ruled that loss of consortium is not recoverable under Section 1983. *See Berry v. City of Musjogee*, 900 F.2d 1489, 1506-07 (10th Cir. 1990) (plaintiffs not entitled to loss of consortium damages because section 1983 creates a federal remedy only for the party injured); *Stallworth v. City of Cleveland*, 893 F.2d 830, 838 (6th Cir. 1990) (dismissing husband's request for recovery for loss of consortium under section 1983 claim because the wife, rather than her husband, was the one who had suffered a deprivation of her civil rights). For all of these reasons, Mr. Scull is entitled to summary judgment on Ms. Polches' loss of consortium claim in Count IX.

## CONCLUSION

For the reasons set forth in this Motion and incorporated memorandum of law, Mr. Scull respectfully requests that the Court enter summary judgment in his favor on all claims in this matter.

Dated at Portland, Maine this 22nd day of June, 2018.

>     Attorneys for Defendant William Scull
>     MONAGHAN LEAHY, LLP
>     95 Exchange Street, P.O. Box 7046
>     Portland, ME 04112-7046
>     (207) 774-3906
> BY: /s/ John J. Wall, III
>     John J. Wall, III

## CERTIFICATE OF SERVICE

    I hereby certify that on June 22, 2018, I electronically filed **Defendant William Scull's Motion for Summary Judgment, with Incorporated Memorandum of Law** using the CM/ECF system, which will provide notice to me and the following other counsel of record: jeffreywdavidson@hotmail.com; ebenjamin@dwmlaw.com; kpark@dwmlaw.com.

    Dated at Portland, Maine this 22nd day of June, 2018.

                            Attorneys for Defendant William Scull
                            MONAGHAN LEAHY, LLP
                            95 Exchange Street, P.O. Box 7046
                            Portland, ME 04112-7046
                            (207) 774-3906
BY:    /s/ John J. Wall, III
                            John J. Wall, III